IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**KRISTEY L. McDANIEL,**

       **Plaintiff,**

vs.                                                 **No. CIV 07-845 JCH/RLP**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

       **Defendant.**

**UNITED STATES MAGISTRATE JUDGE'S**
**ANALYSIS AND RECOMMENDED DISPOSITION**[1]

       This is an action for review of the final decision of the Commissioner of Social Security denying the Plaintiff disability income benefits (DIB) and supplemental security income payments (SSI). The matter has been fully briefed by the parties and has been referred to this court for analysis and recommendation.

**I.     General Legal Standards**

       The court's standard of review is set forth in 42 U.S.C. §504(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994).

       An individual shall be determined to be under a disability only if he or she can establish that

---

[1] Pursuant to 28 U.S.C. §636(b)(1), within ten (10) days after a party is served with a copy of this Analysis and Recommended Disposition, either party may, file written objections to such proposed findings and recommendation. A party must file any objections within the ten (10) day period if that party seeks appellate review of the proposed findings and recommendations. Failure to timely file objections with the court will be deemed a waiver of appellate review. Hill v. SmithKline Beecham Corp., 393 F.3d 1111, 1114 (10th Cir.2004).

they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents them from engaging in substantial gainful activity. The physical or mental impairments must be of such severity that the claimant is unable able to perform past relevant work or any other type of substantial gainful work existing in the national economy. 42 U.S.C. §423(d).

      The Commissioner has established a five-step sequential process to evaluate whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920 (2006); Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir .2004); Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Williams v. Bowen, 844 F.2d 748, 750 (10th Cir.1988). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity, whether she has severe impairments, and whether the severity of her impairments meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Id. at 750-51. If claimant's impairments do no meet or equal the severity of a listing, the Commissioner assesses his RFC. 20 C.F.R. §§ 404.1520, 416.920. This assessment is used at both steps four and five of the process. Id.  After assessing claimant's RFC, the Commissioner evaluates steps four and five -whether the claimant can perform his or her past relevant work, and whether he or she is able to perform other work in the national economy. Williams, 844 F.2d at 751. In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work. Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir.2001); Williams, 844 F.2d at 751 n. 2. At step five, the burden shifts to the Commissioner to show other jobs in the national economy within claimant's capacity. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir.1999).

The Contract With America Advancement Act of 1996,[2] ["the Act" herein], adds an additional step onto the sequential evaluation process if there is evidence of substance abuse or alcoholism. Under the Act, payment of disability benefits is foreclosed "if alcoholism or drug addiction would . . .be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C).

To apply the provisions of the Act, the Commissioner must first make a determination that the claimant is disabled, followed by the determination of whether the claimant would still be found disabled if he or she stopped abusing alcohol or drugs. If the claimant's other impairment would remain if the abuse of alcohol or drugs ended, alcohol or drug use is not a contributing factor material to the finding of disability, and the claimant is disabled under the provisions of the Social Security Act. If however, the claimant's remaining impairments would not be disabling without the alcohol or drug abuse, then the alcohol or drug abuse is a contributing factor material to the finding of disability. A majority of the courts who have addressed the issue have held that the claimant has the burden of proving that her alcoholism or drug addiction is not a contributing factor material to her disability determination. Ball v. Massanari, 254 F.3d 817, 821 (9th Cir.2001); Doughty v. Apfel, 245 F.3d 1274, 1279-1280 (11th Cir.2001); Mittlestedt v. Apfel, 204 F.3d 847, 852 (8th Cir.2000); Brown v. Apfel, 192 F.3d 492, 498 (5th Cir.1999).

**II.     History of the Case**

Plaintiff applied for benefits on December 24, 2004 claiming disability since October 2004 due to hepatitis C. (Tr. 44-47). Plaintiff's applications were denied initially and on reconsideration.

---

[2]Pub.L. 104-121, 110 Stat. 847, §§ 105(a)(1)(C) & 105(b)(1)(i) (codified at 42 U.S.C. §§ 423(d)(2)(C) & 1382c(a)(3)(i)).

(Tr. 28-30, 286-293).   An administrative hearing was held October 25, 2006.

The ALJ issued her decision on February 26, 2007, finding:

- Plaintiff had not engaged in substantial gainful activity since her alleged onset date in 2004 (step one).[3]  (Tr. 13).

- Plaintiff had severe impairments of substance abuse and hepatitis C;  that hepatitis C had been adequately treated, rendering substance abuse the "only impairment," and that substance abuse is a contributing factor material to the determination of disability. (Tr. 13-14). (in discussion of step two).  (Tr. 13-14).

- Plaintiff's hepatitis C did not meet or equal listed impairment. (step three).  (Tr. 14)

- Due to substance abuse, Plaintiff was not capable of even sedentary work.  (Tr.14).

- Plaintiff could not perform past relevant work as a gas station worker, restaurant worker, retail store worker or certified nurse assistant, all of which required an RFC for at least sedentary work. (step four). (Tr. 15).

The ALJ's findings at step five are inexplicable.  She refers to the testimony of a vocational witness, stating " [b]ased on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience and residual functional capacity, the claimant has been capable of making a successful adjustment to other work that exists in significant numbers in the national economy" [Tr. 16].  No vocational expert testified.  The ALJ also stated

---

[3]Further down in her decision, the ALJ refers to clearly incorrect dates for the date of alleged onset of disability and the filing of Plaintiff's claim for SSI benefits. In ¶ 11 of her decision, the ALJ states that Plaintiff was not under a disability from January 1, 2003 through the date of the decision. [Tr. 16].  In the final paragraph of her decision, the ALJ referred to August 4, 2004 as the date Plaintiff's filed her application for SSI benefits.  [Tr. 17].  Plaintiff alleged that her disability started on October 8, 2004, and filed her application for SSI benefits on  December 22, 2004. [Tr. 44].  The dates of January 1, 2003 and August 4, 2004 clearly apply to some other case.

that she was applying the medical vocational guidelines for medium work. Id. There was no predicate finding that Plaintiff had the RFC for medium work.

### III.     Issues Raised on Appeal.

Plaintiff contends that the ALJ failed to apply correct legal standards by failing to consider her mental impairment of depression and anxiety at step two and failing to develop the record as to those impairments, failed to apply correct legal standard in consideration of substance abuse, and failed to apply correct legal principles in the evaluation of her credibility, or to support that evaluation with substantial evidence.

### IV.     Factual Background.

See Appendix A.

### V.      Analysis

Although courts may excuse certain deficiencies in decision writing by administrative law judges, that leniency can not be extended in this case. The ALJ cited to and relied upon non-existent vocational testimony. I can not term this harmless error, as it undermines any confidence in the ALJ's analysis. Additionally, at step five, the ALJ applied the medical vocational guidelines for "medium" work. There is no discussion of such an RFC in the decision, or in the administrative record. These and other errors (see footnote 3, supra) render the ALJ's decision unsupportable in law and in fact.

There are other deficiencies in the ALJ's decision which shall be addressed on remand. The ALJ did not mention depression, or any mental impairment, in her decision. Accordingly, the court can not discern whether she determined that Plaintiff failed to make the *de minimus* showing required for a "severe" mental impairment, or whether the ALJ simply ignored the belatedly raised

claim of depression.[4] The court may not "create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself." Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir.2005) (citing Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir.2004); and SEC v. Chenery Corp., 318 U.S. 80, 87, 63 S.Ct. 454, 87 L.Ed. 626 (1943)); see also, Knipe v. Heckler, 755 F.2d 141, 149 n. 16 (10th Cir.1985). An ALJ shall provide reasoning for his or her decision so that judicial review is both possible and meaningful. See Clifton v. Chater, 79 F.3d 1007, 1009 (10th Cir.1996). On remand, the Commissioner shall consider whether a medically determinable mental impairment exists, and shall support finding as to the existence or non-existence of such an impairment with substantial evidence. If such an impairment is found to exist, the Commissioner shall follow the steps for evaluation of such impairment. See 20 C.F.R. §404.1520a, §404.1521; §416.920a; §416.921.

The Commissioner shall document his evaluation of Plaintiff's credibility in a manner than can be meaningfully reviewed. The ALJ did refer to some factors which could bear on credibility in her findings at step two. (Tr. 13). However, her discussion of credibility merely refers to the types of factors to be considered without any discussion of the evidence or the factors actually relied upon. (Tr. 15). This is legally insufficient. Kepler v. Chater, 68 F.3d 387, 390-91 (10th Cir.1995) (holding inadequate ALJ's summary of factors and conclusion regarding credibility without explanation of how specific evidence led to conclusion).

---

[4]It is the plaintiff's burden to prove disability. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir.1997). In order to demonstrate at step two that an impairment is severe, plaintiff must show that it "significantly limits [her] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). While we have characterized this showing as "*de minimis*," see Hawkins, 113 F.3d at 1169, the mere presence of a condition or ailment documented in the record is not sufficient to prove that the plaintiff is significantly limited in the ability to do basic work activities, see Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir.1997).

Finally, the Commissioner shall apply the correct analysis in evaluating Plaintiff's substance abuse. Here the ALJ simply found that because of substance abuse, Plaintiff was not capable of even sedentary work. By so doing, the ALJ failed to determine whether Plaintiff was disabled *prior* to finding that substance abuse was a contributing factor material thereto. The ALJ cannot begin to apply the Act properly prior to making a finding of disability. Drapeau v. Massanari, 255 F.3d 1211, 1214-1215 (10th Cir.2001).

## VI.     Recommended Disposition

I recommend that Plaintiff's Motion to Reverse and Remand to granted, and that this cause be remanded to the Commissioner for additional proceedings consistent with this Analysis and Recommended Disposition. In recommending this remand, I do not direct any particular result. Remand will simply assure that correct legal standards are invoked in reaching a decision, based on the facts of this case. Huston v. Bowen, 838 F.2d 1125, 1132 (10th Cir. 1988).

                                                Richard L Puglisi
                                                United States Magistrate Judge

Appendix A

1. Plaintiff was born on March 3, 1980. [Tr. 44]. She is a high school graduate. [Tr. 107]. She has past relevant work experience. [Tr. 53-60, 104-105].

2. Plaintiff was diagnosed with hepatitis C in 2002. [Tr. 203]. She did not seek treatment at that time and continued to work following her diagnosis.[5] She last worked on October 8, 2004. [Tr. 44, 104]. She cares for her four children, who were 8, 6, 4 and 2 on the date of her administrative hearing. (Tr. 305, 311, 61-68).

3. Plaintiff sought treatment for hepatitis C at the University of New Mexico Hospital ["UNMH" herein] on April 28, 2005. [Tr. 113-114]. Initiation of treatment was delayed because of recent drug use. Id. She was eventually treated at La Clinica De Familia with a combination of Interferon and Ribasphere [generic name Ribaviron]. [See, e.g., Tr. 203, 217, 236]. The course of treatment lasted six months, ending in March 2006. [Tr. 313]. On August 29, 2006, Plaintiff denied any chronic medical problems. [Tr. 275]. At the time of her administrative hearing on October 25, 2006, she testified that as far as she knew, she had successfully completed treatment for Hepatitis C. [Tr. 320]. She stated that she was awaiting results of blood tests to determine if she was still negative and that she would contact her attorney as soon as she had the results. [Tr. 312, 315]. No evidence was submitted to the ALJ in the four months between the administrative hearing and her written decision indicating that Plaintiff's therapy was not successful.

4. Plaintiff has a long history of substance abuse. The record indicates:

- Plaintiff used cocaine during pregnancy. [Tr. 137].

- Plaintiff took intravenous drugs after 1999. [Tr. 113].

---

[5]In a work history report prepared in January 2005, Plaintiff indicated that she worked at a Conoco gas station eight hours per day, six days per week from January to November 2002, and at a Blake's [Lot-a-Burger] seven hours per day, seven days per week starting in February 2003. [Tr. 53-57-58]. In a Disability report submitted in January 2006, Plaintiff stated that she worked at a restaurant from August 2002 until October 2004, eight hours per day, five days per week. [Tr. 104]. Plaintiff reported annual earnings of $4,250.40 in 2002; $11,183.14 in 2003 and $2,585.95 in 2004. [Tr. 51].

- There were complications during her 1999 and 2002 pregnancies from the use of crack cocaine. [Tr. 140].

- Plaintiff was counseled about cocaine use at a pre-natal visit on January 26, 2003 . [Tr. 142].

- Plaintiff complained of agitation and insomnia on December 1, 2004, after having taken cocaine the prior week. [Tr. 146].

- Plaintiff smoked crack cocaine in approximately February 2005. [Tr. 113].

- Plaintiff used cocaine during a ten day period in August 2006. [Tr. 275-276, 304].

- In a mental health history taken August 29, 2006, Plaintiff admitted over her lifetime, she had used alcohol to the point of intoxication for 7 years; amphetamines for one year; cannabis for 11 years; cocaine for 8 years; hallucinogens for 1 year; heroin for 1 year and opiates/analgesics for 2 years. [Tr. 275-276].

5.  Plaintiff did not allege disability based on depression or anxiety in any document submitted prior to her October 25, 2006 administrative hearing[6]. The record indicates that:

- On April 21, 2004, while pregnant with her fourth child, she discussed "on and off depression" with her obstetric health care provider. [Tr. 143].

- On December 1, 2004, Plaintiff complained of agitation and inability to sleep. The prior week she had used cocaine. She was diagnosed with anxiety and depression and given a prescription for an antidepressant. No mental status exam or evaluation of her mental condition was included in the note. [Tr. 146].

- At an outpatient visit at UNM Hospital on March 28, 2005, she indicated that she

---

[6]See, e.g.,, Disability Report - Adult, listing Hepatitis C as the illness, injury or condition limiting ability to work. [Tr. 103]; Tr. 92, Disability Report - Adult, stating no new mental limitations resulting from illnesses, injuries or conditions since last completed disability report. [Tr. 92]. Plaintiff did list medication for depression and sleep in a list of prescription medications, however this list was submitted at the time of the administrative hearing. (Tr. 2, 110).

      was being treated with Zoloft for depression. No mental status exam or evaluation of her mental condition was included in the note. [Tr. 116]. Plaintiff was evaluated by her gastroenterologist at UNMH on March 28, 2005. He wrote that "she reports no depression now. . ." (Tr. 113) In a Disability Report dated March 30, 2005, Plaintiff stated that she was taking no medication. [Tr. 117, 80].

- An April 28, 2005 treatment note from UNMH states that Plaintiff "had been diagnosed with depression in the past and was put on Zoloft but never took it. She reports no depression now. . ." [Tr. 113].

- In a Disability Report dated May 19, 2005, Plaintiff stated she was taking no medication. [Tr. 87].

- On July 29, 2005, Plaintiff was seen at UNMH for evaluation of hepatitis C. She was not symptomatic at that time.[7] Her physician wrote "The patient has normal flow of thought and does not seem depressed." [Tr. 210]. A CES-D[8] questionnaire she completed that day, as part of the treatment protocol, indicated that she was "moderately depressed." [Tr. 268]. No medications were prescribed.

- Plaintiff returned to UNMH on September 30, 2005 to schedule initiation of treatment. She complained of "some insomnia and pain on her right side as well as

---

    [7] "Symptomatically she is doing well and denies abdominal pain, bright red blood per rectum, melena, nausea, vomiting, fever, chills, jaundice, edema or prutitus . . . The patient denies chest pain, shortness of breath, depression or suicidal ideation." [Tr. 210].

    [8]The CES-D was developed in the 1970s by National Institute of Mental Health researcher, Lenore Radloff. Her study indicates that "almost 85% of those found to have depression after an in-depth structured interview with a psychiatrist will have a high score on the CESD. However, about 20% of those who score high on the CESD will have rapid resolution of their symptoms and not meet full criteria for major or clinical depression." Original reference: Radloff, L.S. (1977) 'The CES-D scale: A self report depression scale for research in the general population'. A*pplied Psychological Measurement* 1: 385-401. This test is meant to be used as a starting point, not as a diagnosis tool. This score is not intended as a mental disorder diagnosis, or as any type of healthcare recommendation. http://counsellingresource.com.

- low back pain." No abnormalities were noted on physical examination. [Tr. 203-204]. She completed another CES-D questionnaire, scoring as mildly depressed. [Tr. 268].

- Plaintiff initiated treatment for hepatitis C at La Clinica De Familia on October 10, 2005. She gave a history of "depression - anhedonia x 2 mo, relationship problems," and was placed on Paxil [20 mg.], an antidepressant. [Tr. 273].

- Plaintiff returned to La Clinica de Familia two weeks later, complaining of "insomnia x yrs, falls asleep at 4 a.m., no exercise, sleeps in day." [Tr. 272]. She also indicated that she was taking no medication. Id. She was counseled extensively about the signs/symptoms and concerns related to her treatment for hepatitis C, referred for counseling, and given a prescription for Xanax to treat insomnia. Id.

- Plaintiff completed a third CES-D questionnaire on November 9 or 10, 2005, scoring as "moderately depressed." She admitted that she had not been taking Paxil, but had restarted it. She refused referral for counseling. [Tr. 267-268].

- On November 22, 2005 Plaintiff's dosage of Paxil was increased to 30 mg. [Tr. 264].

- On November 30, 2005, Plaintiff's treating physician at La Clinica de Familia, Dr. Maslona, presented her case to the ECHO Network.[9] Medication changes were suggested including changing her antidepressant if her CES-D score did not improve, and use of Temazopam for insomnia. [Tr. 258].

- Plaintiff's score on the fourth CES-D questionnaire, completed on December 14, 2005, had not improved [Tr. 256], and eight days later she complained of continued

---

[9]Project Extension for Community Healthcare Outcomes [Project ECHO] is a telemedicine and distance-learning program designed to improve access to quality health care for New Mexicans with hepatitis C. www.publichealthreports.org/userfiles/122_SUP2/15_PHR122_Sup2_74-77.pdf

11

insomnia. Her medications were reviewed but not changed. [Tr. 253].

- By January 13, 2006, she reported that insomnia had improved. Her complaints at that time were of weight gain attributed to eating junk food and lack of exercise. No observation related to her mental state was recorded. [Tr. 249].

- On January 23, 2006, Plaintiff complained of fatigue and feeling "out of it." Based on the history given and current medications list, it appears that she was being treated for a urinary tract infection, although those records are not in the Administrative Record. [Tr. 241]. She obtained a brain CT for "weakness and ataxia" which was normal [Tr. 237]. By January 27, 2006, all her symptoms of weakness had resolved, and she felt "well." [Tr. 236].

- On February 14, 2006, Plaintiff's insomnia medication was changed from Xanax to Ambien. [Tr. 233].

- Plaintiff completed a CES-D questionnaire on March 3, 2006 (Tr. 221) on which she scored 18, or mildly depressed. (Tr. 268).

- Plaintiff completed a CES-D questionnaire on March 31, 2006 (Tr. 221). No comment regarding the score on this questionnaire could be located in the administrative record. Applying the directions for scoring found at Tr. 268, Plaintiff would have scored 12, or mildly depressed. Appended to this questionnaire is a Health and Well-Being survey, in which Plaintiff stated that her health was very good to excellent and denied any limitation in listed physical activities. Plaintiff also described herself as always full of life and energy, calm and happy most of the time, and nervous, worn out, depressed and tired some of the time. [Tr. 222-226].

- Plaintiff was seen at Socorro Mental Health on August 29, 2006, five months after

       completing hepatitis C therapy, and immediately following incarceration[10] and drug use relapse. [Tr. 275]. At that time she indicated she was slightly troubled by psychological and emotional problems over the past month, but expressed no need for counseling. [Tr. 278]. Her psychiatric problems were considered to be "slight," and not requiring treatment, while her problems with substance abuse were considered "extreme" with treatment absolutely necessary. Id.

- On October 25, 2006, Plaintiff's counselor at Socorro Mental Health wrote a letter "to whom it may concern" stating that Plaintiff had participated in counseling since August, and was working on substance abuse and other underlying issues. [Tr. 281].

6. At the administrative hearing Plaintiff testified that she was very depressed, got anxious around people, had a poor appetite, unusual weight gain and sleeplessness. (Tr. 313-314). She also stated that she slept pretty well when she took Ambien and had no medication side effects. (Tr. 314-315).

---

[10]Plaintiff testified that she was jailed for forty-two days for failing to pay traffic tickets. (Tr. 308). She was also on probation for a forgery conviction. (Tr. 310).